UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 1:16-CR-55-TLS-SLC |
| KEENAN DAVIS | |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Early Release [ECF No. 152], filed by Defendant Keenan Davis pro se on June 23, 2020, and on a Brief in Support of Motion for Compassionate Release [ECF No. 160], filed by counsel for Defendant Davis on August 10, 2020. Defendant Davis seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic and his personal risk factors. For the reasons set forth below, Defendant's motion is denied.

**BACKGROUND**

On August 24, 2016, an Indictment [ECF No. 1] was returned charging Defendant with count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant was arrested on August 30, 2016 [ECF No. 12]. On December 20, 2016, a Superseding Indictment [ECF No. 38] was returned adding a second count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On February 27, 2017, a jury found Defendant guilty on both counts of the Superseding Indictment [ECF No. 70]. On August 30, 2017, the Court sentenced Defendant to 100 months imprisonment on Count I and 25 months imprisonment on Count II, to be served concurrently, followed by two years of supervised release. *See* ECF No. 100. Defendant has been in custody since his arrest on August 30, 2016. Revised Final PSR at 1, ECF No. 97. Defendant is currently confined at Federal Correctional

Institution Schuylkill (FCI Schuylkill) in Pennsylvania. Def.'s Br. at 6, ECF No. 160; Gov't Resp. at 6–7, ECF No. 163.

On June 23, 2020, Defendant file the instant Motion for Early Release [ECF No. 152] asking to be released from prison in light of the COVID-19 pandemic. On June 24, 2020, the Court issued an Order [ECF No. 155] referring this matter to the Federal Community Defender to consider filing a supplemental brief in support of Defendant's request. On July 8, 2020, counsel entered an appearance [ECF No. 156] on behalf of Defendant, and, on August 10, 2020, counsel filed a Brief in Support of Motion for Compassionate Release [ECF No. 160]. On August 24, 2020, the Government filed a Response [ECF No. 163] opposing Defendant's motion.

## ANALYSIS

Defendant asks the Court to modify his sentence pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) based on the threats posed by the COVID-19 pandemic and his personal health concerns of Type II Diabetes (Insulin Dependent) with diabetic neuropathy, hyperlipidemia, and asthma. Def.'s Br. at 5. Defendant asks the Court for an order reducing his sentence to time served, or alternatively, an order reducing his sentence to time served and modifying his judgment to add the unserved portion of his original sentence to his term of supervised release so that it may be served on home confinement. *Id.* at 17. For the reasons set forth below, the Court denies the motion.

Following the imposition of sentence, a court may not modify the term of imprisonment absent specific circumstances enumerated in 18 U.S.C. § 3582(c). One such circumstance allows a court to grant a defendant compassionate release if certain requirements are met. *Id.* § 3582(c)(1)(A). The statute provides that

> the court, upon motion of the Director of the Bureau of Prisons, or *upon motion of the defendant* after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . .
> >
> > and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

*Id.* (emphasis added). Thus, the statute sets out four requirements: exhaustion of administrative remedies, consideration of whether "extraordinary and compelling reasons" warrant a reduction in the term of imprisonment, consideration of the § 3553(a) factors, and consistency with the applicable Sentencing Commission policy statements.

While the statute does not define "extraordinary and compelling reasons," Congress provided:

> The [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t).

Pursuant to that authority, the Sentencing Commission Policy Statement on § 3582(c)(1)(A) provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

3

> (1) (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S. Sentencing Guidelines Manual § 1B1.13. The commentary to the Policy Statement then provides that extraordinary and compelling reasons exist under any of these circumstances:

> (A) <u>Medical Condition of the Defendant</u>.—
>
>> (i) The defendant is suffering from a terminal illness (<u>i.e.</u>, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (<u>i.e.</u>, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) <u>Family Circumstances</u>.
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1.

Policy Statement § 1B1.13 was effective November 1, 2018, but has not been updated to reflect that the First Step Act amended § 3582(c)(1)(A) in December 2018 to allow a motion to be brought by a defendant and not only by the Bureau of Prisons. *See* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)."). Nevertheless, § 1B1.13 provides guidance on the "extraordinary and compelling reasons" that may warrant a reduction in a term of imprisonment on a motion brought by a defendant. *See United States v. Scott*, No. 17-CR-156, 2020 WL 2508894, at *7–8, — F. Supp. 3d —, — (E.D. Wis. May 15, 2020) (agreeing with the majority of courts that a "court in deciding a compassionate release motion is no longer confined to the specific examples enumerated in U.S.S.G. § 1B1.13"); *United States v. McGraw*, No. 2:02-cr-18, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019) ("While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." (citing cases)).

First, the parties do not dispute that Defendant has exhausted his administrative remedies. Thus, the Court turns to whether Defendant has demonstrated "extraordinary and compelling reasons" for his release. Defendant argues that his underlying medical conditions of Type II Diabetes (Insulin Dependent) with diabetic neuropathy, hyperlipidemia, and asthma make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for

5

relief. Although the Court recognizes that COVID-19 poses a general threat to every non-immune person in the country, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *see also* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited Sept. 14, 2020); Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ index.jsp (last visited Sept. 14, 2020). Rather, § 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions. *See United States v. Downing*, No. 18-cr-40037, 2020 WL 2789790, at *2 (C.D. Ill. May 29, 2020) ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." (quoting *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020))).

Defendant is housed at FCI Schuylkill. In his motion, Defendant contends that the BOP reports that there are 1047 inmates at FCI Schuylkill and that the facility has been extremely slow to test for COVID-19 since going to modified operations on March 13, 2020. Def.'s Br. 6. Defendant asserts that, on June 16, 2020, FCI Schuylkill had only tested 5 of its 1047 inmates; Def.'s Br. Ex. D, ECF No. 160-4; on June 30, 2020, 35 inmates had been tested, Def.'s Br. Ex. E, ECF No. 160-5; the first positive test was reported on July 3, 2020, Def.'s Br. Ex. F, ECF No. 160-6; on July 15, 2020, 56 inmates had completed tests, 23 had pending tests, and there was 1

6

positive test, Def.'s Br. Ex. G, ECF No. 160-7; on July 31, 2020, 137 inmates had completed tests, 1 inmate had a test pending, and there was 1 positive test, Def.'s Br. Ex. H, ECF No. 160-8; and as of August 9, 2020, the BOP website showed 168 inmates had completed tests, 4 inmates had a pending test, and 1 inmate tested positive, Def.'s Br. at 6–7. The Court's review of the website shows that, as of September 10, 2020, 287 inmates had completed tests, no inmates had pending tests, and 3 inmates had a positive test. COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Sept. 14, 2020). The map function on the same website of confirmed active COVID-19 cases shows no confirmed active inmate cases and one confirmed active staff case. COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Sept. 14, 2020).

      The Court notes that BOP facilities have strict precautions in place including shelter-in-place protocols, screening and quarantining all newly arriving detainees, screening staff, restricting access to BOP facilities, suspending social visits, limiting legal visits, isolating all symptomatic detainees until medically cleared, and issuing and encouraging the use of face masks. *See* Gov't Resp. 14–17; BOP Implementing Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 14, 2020). Defendant has not shown that his institution is facing a serious outbreak of COVID-19 infections or that FCI Schuylkill is incapable of successfully containing an outbreak. Accordingly, Defendant's general concerns surrounding the conditions at FCI Schuylkill are insufficient to warrant his release.

      In contrast, Allen County, where Defendant proposes living if released, has 5,642 positive COVID-19 cases and 185 COVID-19 deaths as of September 14, 2020. *See* COVID-19 Pandemic, Allen County Department of Health, https://www.allencountyhealth.com/get-informed/covid-19/ (last visited Sept. 14, 2020). Defendant's plan, if released, is to live in Fort Wayne, Indiana, in Allen County, with his son who works the swing shift at a food packaging

company. Def.'s Br. at 17–18. Although Defendant would have a separate bedroom, there is only one bathroom in the house and Defendant's son would be transporting Defendant as needed. It does not appear that Defendant would be safer outside of prison than where he is currently housed.

Turning to Defendant's personal health conditions of Type II Diabetes with diabetic neuropathy, hyperlipidemia, and asthma, the Court finds that, even in the context of the COVID-19 pandemic, his conditions do not constitute an extraordinary and compelling reason to justify a sentence reduction. *See* Def.'s Br. Ex. B at 868, ECF No. 160-2. As of May 13, 2020, Defendant was prescribed nine medications. *Id.* at 785–86. The Court recognizes that Type II diabetes mellitus is one of the eight conditions that places an individual at an increased risk of severe illness if the individual were to contract COVID-19. *See* People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Sept. 14, 2020) ("People of any age with the following conditions are at increased risk of severe illness from COVID-19: . . . Type 2 diabetes mellitus."). And, individuals with moderate-to-severe asthma "might be at an increased risk for severe illness from COVID-19." *Id.* Defendant's conditions of hyperlipidemia and diabetic neuropathy are not listed as conditions that increase his risk for severe or serious illness from COVID-19. Although diabetes and asthma are chronic conditions, Defendant has not offered evidence that he suffers from these conditions to a degree that substantially diminishes his ability to provide self-care within the environment of the correctional facility.

Overall, Defendant's conditions are being managed within the BOP. In his brief, Defendant contends that his diabetes is not well controlled within the BOP because of his consistently elevated hemoglobin A1C levels. Def.'s Br. at 11 (citing Def.'s Br. Ex. B at 567, 591, 788). However, the Government notes that Defendant has a history of non-compliance with

the medical staff trying to manage his diabetes, missing doses of insulin on January 6 and 10, 2020, failing to show up for a monthly visit and lab work on February 4, 2020, and failing to show up for his three-month clinic visit on March 17, 2020. Gov't Resp. at 11; *see* Def.'s Br. Ex B at 799, 810, 811, 832, 923. In addition, Defendant reported that he was missing the pill line one to two times per week. Gov't Resp. at 11–12; *see* Def.'s Br. Ex. B at 794. The Government notes that on April 8, 2020, Defendant reported that he was not taking his Metformin. Gov't Resp. at 12; *see* Def.'s Br. Ex. B at 794. However, the Court notes that, earlier on January 10, 2020, Defendant reported he had been taking his Metformin even though he missed his morning insulin dose. Def.'s Br. Ex. B at 813. The Government notes that, during medical visits on January 2, 2020, January 10, 2020, March 2, 2020, April 8, 2020, and May 13, 2020, medical staff discussed with Defendant the importance of complying with the diabetes medications prescribed to him. Gov't Resp. at 12; *see* Def.'s Br. Ex. B at 787, 816, 862. The Government also notes that Defendant has had regular chronic care appointments with BOP medical staff and has one scheduled for October 30, 2020. Gov't Resp. at 12; *see* Def.'s Br. Ex. B at 784, 787. The Government notes that, on the occasions when Defendant's non-compliance has created a medical emergency that the BOP cannot handle, Defendant has been promptly transferred to a medical facility that could address the acute issue. Gov't Resp. at 12; *see* Def.'s Br. Ex. B at 902 (emergency room visit for vomiting and hyperglycemia). The Government also notes that BOP records show that Defendant has no medical restrictions. Gov't Resp. at 13; *see* Def.'s Br. Ex. B at 722–725, 877. The Court notes that, on April 22, 2020, Defendant's medical records show that he was "compliant with insulin last couple weeks due to COVID modified movement," Def.'s Br. Ex. B at 788; that on May 13, 2020, he reported taking his insulin regularly, *id.* at 784; and that on June 12, 2020, he reported compliance with medication and checking blood glucose at

pill line, *id.* at 780. As for his asthma, Defendant has offered very little to show that this condition is extraordinary, compelling, terminal, or limiting. *see* Def.'s Br. Ex. B at 780.

Defendant argues in his brief that he missed doses of extra coverage insulin because he was concerned about getting seizures from low blood sugar and that he discussed this with medical staff. Def.'s Br. at 12; Def.'s Br. Ex. B at 586. He also notes that, on December 2, 2019, he had a seizure and that when he was taken to the clinic, his blood sugar was 20. Def.'s Br. at 12; Def.'s Br. Ex. B at 577, 579. On June 12, 2020, he discussed with the nurse practitioner why he refused the extra coverage insulin, stating "because it bottoms me out." Def.'s Br. at 12; Def.'s Br. Ex. B at 780. Defendant argues that the medical staff did not work with him to change his dose of insulin but instead marked that he was not compliant. He also asserts that, in 2018, medical staff ignored his complaints of abdominal pain, sending him back to his unit, but he next day, he was hospitalized in the Intensive Care Unit for a perforated ulcer, requiring two units of blood and surgery. Def's Br. at 12; Def.'s Br. Ex. B at 328, 530–31. However, The Court notes that the 2018 event occurred while he was incarcerated at FCC Hazelton. Defendant also argues that, if he were not incarcerated, he would have the opportunity to eat a diet higher in protein with less carbohydrates and may have the opportunity to pursue getting a diabetic pump.

When considering all the records and argument in combination, Defendant has not shown that his conditions of diabetes and asthma have substantially diminished his ability to provide self-care at his place of incarceration. Further, Defendant is 43 years old and, thus, is not of advanced age. *See* Revised Final PSR 2, ECF No. 97.

Having considered the location of Defendant's confinement and the nature of his health concerns, and in light of the 3553(a) factors discussed below, the Court finds that Defendant has not shown extraordinary and compelling reasons that would make him eligible for a reduction in his term of imprisonment. *See United States v. Bowling*, No. 2:16-CR-153-PPS, 2020 WL

10

4915665, at *3–5 (N.D. Ind. Aug. 21, 2020) (denying compassionate release where the defendant was receiving adequate care for her medical conditions of diabetes, anemia, high blood pressure, hyperlipidemia, back pain, and depression and had not shown that her medical conditions substantially diminished her ability to provide self-care while incarcerated).

3. *Section 3553(a) Factors*

Moreover, in considering the § 3553(a) factors and whether Defendant is a danger to the safety of any other person or the community, the Court finds that the factors do not warrant a reduction in his sentence. Defendant's criminal history has spanned almost thirty years and includes multiple convictions for battery as well as a conviction for resisting law enforcement. His February 24, 2011 domestic battery conviction involved him chocking his girlfriend and punching her in the face; his August 5, 2011 battery conviction involved him arguing with the mother of his children, culminating in him throwing a soda can that struck his three-year-old son in the head; and his 2013 domestic battery conviction involved him hitting, kicking, and stomping Heather Gaff, which appeared to be mutual battery because she had hit him in the face with a tea pot. Revised Final PSR ¶¶ 66, 69, 72, ECF No. 97. And, in the instant case, after knocking on the apartment door, Defendant forced his way into the home of his ex-girlfriend and the mother of his three children, put a gun to her head, and knocked her to the floor, all in the presence of at least one of their minor children. *Id.* ¶¶ 4, 6, 7. Then, Defendant fought Anthony Wamue over the gun, with the fight moving out the back door of the apartment, where Wamue eventually got the gun away from Defendant. *Id.* ¶ 5. The Government represents that, while in prison, Defendant was sanctioned on February 10, 2020, for being absent from callout, and on February 29, 2020, for possessing stolen property. *See* Gov't Resp. at 20.

Although Defendant had a difficult upbringing and adult life, those factors were considered at the time of his original sentence and were offered as mitigation for a reduced

11

sentence. The nature and circumstances of the instant offense and the history and characteristics of Defendant do not warrant a sentence reduction. In addition, Defendant has only served approximately half of his sentence of 100 months. With good time credit, Defendant's projected release date is October 22, 2023, with a full-term release date of December 18, 2024. Gov't Resp. at 7. As of July 9, 2020, Defendant has served 54.2 percent of his good-time credit sentence and 46.6 percent of his full-term sentence. *Id.* Defendant has presented no compelling argument to change the Court's finding that the original sentence of 100 months imprisonment was sufficient, but not greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a).

Therefore, based on Defendant's specific circumstances, the Court finds that a reduced term of imprisonment under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) is not warranted. *See Downing*, 2020 WL 2789790, at *1–2 (denying motion for compassionate release, even though the defendant has health issues of type 2 diabetes, COPD, anemia, asthma, and high blood pressure, where the defendant was 43 years old, the defendant was housed in a facility with very few COIVD-19 cases, and early release would not be consistent with the § 3553(a) factors); *United States v. Shah*, 16-20457, 2020 WL 1934930, at *1–2 (E.D. Mich. Apr. 22, 2020) (denying motion for compassionate release on the basis that, although the defendant suffers from diabetes and hypertension, there were no cases of COVID-19 in his facility and the BOP is making strict efforts to protect inmates); *United States v. Desage*, 2:13-cr-39, 2020 WL 1904584, at *1–4 (D. Nev. Apr. 17, 2020) (denying relief for a 69-year-old inmate at outset of 36-month sentence, given his criminal record, even though he is diabetic, because he would be isolated and the BOP is taking steps to keep inmates safe).

## CONCLUSION

Based on the foregoing, the Court DENIES the Motion for Early Release [ECF No. 152] and the Brief in Support of Motion for Compassionate Release [ECF No. 160].

SO ORDERED on September 14, 2020.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
